IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 06-0287-WS |
| | ) | |
| COLLIE BO YOUNG EVANS, JR., | ) | CIVIL NO. 08-0216-WS |
| | ) | |
| Petitioner. | ) | |

**ORDER**

This matter is before the Court on petitioner Collie Bo Young Evans, Jr.'s Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (doc. 213) pursuant to 28 U.S.C. § 2255. The Motion has been briefed and is ripe for disposition at this time.

**I.     Background.**

On January 24, 2007, a four-count Superseding Indictment (doc. 84) was filed charging defendant/petitioner Collie Bo Young Evans, Jr. and five co-defendants with certain unlawful activities. Evans was named in Counts One, Two and Three. Count One charged Evans and his co-defendants with conspiring to possess with intent to distribute more than 50 kilograms of cocaine, in violation of 21 U.S.C. § 846, between January 1, 2005 and December 2, 2006. Count Two charged Evans and three other defendants with possessing with intent to distribute two kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1), on or about December 1, 2006. Count Three charged Evans with possessing a firearm in furtherance of the § 846 drug trafficking offense charged in Count One, in violation of 18 U.S.C. § 924(c)(1)(A).

On February 15, 2007, Evans, who was represented by retained counsel Dennis Knizley, executed a Plea Agreement and Factual Resume (doc. 105). In the Factual Resume, Evans expressly "admits the allegations of Counts One and Three of the Superseding Indictment." (Doc. 105, at 1.) Evans also admitted that the Government could prove the following offense conduct beyond a reasonable doubt: (a) that Evans or his brother, co-defendant Darrel Evans, had received deliveries of cocaine transported from Texas to Alabama by co-defendants Pedro Antonio Gonzalez and Jose Manuel Prado on multiple occasions in the months prior to

December 1, 2006; (b) that on December 1, 2006, Evans had picked up six kilograms of cocaine from Prado and co-defendant Juan Jose Martinez; (b) that on the evening of December 1, 2006, Evans drove his mother's vehicle to a prearranged location, where he met with Prado (who was then cooperating with the Government) and delivered to him approximately $38,000 in U.S. currency in partial payment for the cocaine he had received earlier that day; (c) Evans was arrested at that location; (d) at the time of Evans' arrest, law enforcement officers found a High Point .40 caliber semi-automatic pistol under his seat in the vehicle; (e) Evans had brought the pistol, which belonged to him, to the transaction; (f) the clip and ammunition for that firearm were also found under the seat; (g) Evans admitted "that he used and carried the pistol ... in relation to and in furtherance of the drug conspiracy"; and (h) Evans admitted that the Government "could prove his involvement beyond reasonable doubt with 14 kilograms of cocaine." (Factual Resume (doc. 105), at 2-3.)

In the accompanying Plea Agreement, Evans made the following representations concerning his plea of guilty: (a) that he had the benefit of legal counsel in negotiating the Plea Agreement, understanding the essential elements of the criminal charges against him, and assessing the Government's evidence; (b) that Evans believed his attorney had "represented him faithfully, skillfully, and diligently," and that Evans was "completely satisfied with the legal advice of his attorney"; and (c) that Evans' plea was voluntary and "that he is pleading guilty because he knows that he is guilty." (Plea Agreement, ¶¶ 6, 7, 9.)

Also on February 15, 2007, Evans came before the undersigned District Judge to enter his plea of guilty to Counts One and Three. Evans was placed under oath, after which he answered a series of questions posed by this Court. In particular, Evans answered affirmatively when asked whether he was fully satisfied with the representation he had received from Knizley, and whether he had fully discussed with Knizley all of the facts surrounding the charges against him. (Guilty Plea Hearing Transcript (doc. 216), at 9.) Evans further answered affirmatively when asked whether he had signed the Plea Agreement, whether he had read it, whether he had discussed it with counsel, whether he understood it, and whether he agreed with it. (*Id.* at 9-10.) The Court also recited the legal elements of Counts One and Three, as set forth in the Plea Agreement, after which the following colloquy occurred:

"THE COURT:        Do you understand that those are the elements of the offenses to

>            which you are pleading guilty?
>
> "DEFENDANT COLLIE EVANS:    Yes, sir.
>
> "THE COURT:    All right.  And do you fully understand that if there was a trial in this case, the United States would be required to present sufficient evidence to prove each of these essential elements beyond a reasonable doubt?
>
> "DEFENDANT COLLIE EVANS:    Yes, sir."

(Doc. 216, at 24.)

> The change of plea hearing additionally included the following exchange:
>
> "THE COURT:    ... Mr. Evans, did you, in fact, commit the acts and do the things that you have admitted to in this statement of offense conduct?
>
> "DEFENDANT COLLIE EVANS:    Yes, sir.
>
> "THE COURT:    Then I find that the facts and acts to which you have admitted support a violation of the charges contained in Counts One and Three of the superseding indictment.  How do you now plead to the charges in Counts One and Three of the indictment, guilty or not guilty?
>
> "DEFENDANT COLLIE EVANS:    Guilty.
>
> "THE COURT:    And are you pleading guilty of your own free will because you are guilty?
>
> "DEFENDANT COLLIE EVANS:    Yes, sir."

(Doc. 216, at 27.)  On the basis of Evans' statements under oath at the hearing, the Court accepted his plea of guilty, and adjudged him guilty of the offenses delineated in Counts One and Three of the Superseding Indictment.  (*Id.* at 29.)

More than six months later, on August 28, 2007, the Court conducted a sentencing hearing in this matter.  Evans was facing a mandatory minimum sentence of 120 months as to Count One, and a 60-month mandatory consecutive sentence as to Count Three; however, because of the Plea Agreement negotiated by his counsel, the Government filed a motion for downward departure (doc. 199) pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e), pursuant to which the Government requested that the Court reduce Evans's sentence to 50% off the

combined mandatory minimum 180-month sentence. (Sentencing Transcript (doc. 216, at 4.) The Court granted the Government's motion for downward departure, allocating the resulting 90-month sentence to 30 months for Count One, with 60 months consecutive on Count Three. (*Id.* at 6, 12-13.) When given the opportunity to allocute at the sentencing hearing, Evans expressed neither dissatisfaction with Knizley's representation nor regrets over his guilty plea, but instead apologized to this Court, his community, his mother, his son, and the prosecutor. (*Id.* at 10-11.) In imposing sentence, the Court noted that while Evans' conduct amounted to "an extreme violation of Federal law," Evans had also engaged in certain conduct to help himself, such as admitting guilt, accepting responsibility, and cooperating with the Government, which resulted in a drastic reduction in his sentence from the stiff mandatory statutory penalties that would otherwise have been imposed. (*Id.* at 13.)[1]

Evans now attempts to undo many of the very things he did to help himself in this case. On April 24, 2008, he timely filed a § 2255 motion in which he alleges that his guilty plea was the product of constitutionally ineffective assistance of counsel. In particular, Evans asserts that his counsel rendered ineffective assistance in the following respects: (a) by allowing him to plead guilty to Count Three, even though Evans "was duly licensed and authorized to have a weapon in his possession, and at no time did Movant possess or use the weopon [*sic*] in connection with or furtherance of 21 U.S.C. § 846 offenses"; (b) by allowing him to plead guilty to Count Three despite the absence of "sufficient evidence, as the weapon ... was unloaded and found in Movant's vehicle, which Movant was authorized to possess, and which possession was not in relation to drug activity"; (c) by allowing him to plead guilty to Count Three because "[n]o reasonable reading of 18 U.S.C. § 924(c) ... sustains or supports any determination that Movant carried a gun during any drug activity"; and (d) by allowing him to plead guilty to Count Three when "no fact finder could reasonably link the gun to any drug activity." (Doc. 233, at 4-8.) The crux of all of these different formulations is Evans' position that his attorney provided constitutionally inadequate representation by advising and allowing him to plead guilty to the § 924(c) charge.

---

[1] Evans did not pursue a direct appeal from the conviction and 90-month sentence imposed by this Court.

**II.    Legal Standard.**

Collateral relief is an extraordinary remedy which "may not do service for a [ ] [direct] appeal." *United States v. Frady*, 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *see also Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) ("Courts have long and consistently affirmed that a collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal."). A defendant who has waived or exhausted his right to appeal is presumed to stand "fairly and finally convicted." *Frady*, 456 U.S. at 164. Unless a claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained extremely limited. *United States v. Addonizio*, 442 U.S. 178, 185, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979). Consequently, "[i]f issues are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack. ... A defendant is, of course, entitled to a hearing of his claims, but not to duplicate hearings. The appellate process does not permit reruns." *Moore v. United States*, 598 F.2d 439, 441 (5th Cir. 1979).

In general, claims not raised on direct appeal may not be considered on collateral attack. A petitioner can, however, overcome his procedural default of claims not raised on direct appeal. The burden a petitioner must meet differs, depending upon the type of claim raised. First, "nonconstitutional claims can be raised on collateral review only when the alleged error constitutes a fundamental defect which inherently results in the miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *Burke v. United States*, 152 F.3d 1329, 1331 (11th Cir. 1998) (citations and internal quotations omitted). A petitioner's burden with regard to constitutional claims not presented on direct appeal is slightly less stringent. Constitutional claims may be considered if the petitioner can "show cause excusing his failure to raise the issues previously and actual prejudice resulting from the errors." *Cross v. United States*, 893 F.2d 1287, 1289 (11th Cir. 1990). Jurisdictional issues are not subject to procedural default because federal courts have limited jurisdiction and the parties cannot by waiver or default confer a jurisdictional foundation that is otherwise lacking. *Harris v. United States*, 149 F.3d 1304, 1307 (11th Cir. 1998).

One way a petitioner may overcome a procedural default is by demonstrating that the default was attributable to constitutionally ineffective performance by trial or appellate counsel. *Cross*, 893 F.2d at 1290. To establish ineffective assistance of counsel:

> "... a petitioner must show that counsel's performance was deficient and that he was prejudiced by that deficiency.  A petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions."

*Hagins v. United States*, 267 F.3d 1202, 1204-05 (11th Cir. 2001) (internal citations omitted); *see also Cross*, 893 F.2d at 1290.  Deficient performance requires a showing that counsel's performance was "objectively unreasonable and falls below the wide range of competence demanded of attorneys in criminal cases." *Cross*, 893 F.2d at 1290.[2]  Meanwhile, prejudice requires a showing of a "reasonable probability that the result of the proceedings would have been different had counsel not performed deficiently." *Id.*[3]

"Conclusory allegations of ineffective assistance are insufficient." *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) (citation omitted).  Rather, an attorney's performance may be found ineffective in the constitutional sense only if "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

> "When reviewing whether an attorney is ineffective, courts should always presume strongly that counsel's performance was reasonable and adequate. ... Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so.  This burden, which is petitioners' to bear, is and is supposed to be a heavy one.  And, we are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial ... worked adequately.  Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of

---

[2] Petitioner "must prove deficient performance by a preponderance of competent evidence, and the standard is reasonableness under prevailing professional norms." *Gallo-Chamorro v. United States*, 233 F.3d 1298, 1303 (11th Cir. 2000).  Indeed, "for a petitioner to show that the conduct was unreasonable, [he] must establish that no competent counsel would have taken the action that his counsel did take." *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000).

[3] A reasonable probability is defined as "a probability sufficient to undermine confidence in the outcome." *Gallo-Chamorro*, 233 F.3d at 1303-04.  A petitioner must show that the errors "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Cross*, 893 F.2d at 1292 (citation omitted).

counsel are few and far between."

*Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994) (internal quotations and citations omitted); *see also Caderno v. United States*, 256 F.3d 1213, 1217 (11th Cir. 2001) ("There is a strong presumption that counsel's performance was reasonable and adequate, with great deference shown to choices dictated by reasonable trial strategy.").

### III.   Analysis.

Evans' § 2255 motion does not allege that his lawyer lied to him, tricked him, coerced him, confused him, or misled him into pleading guilty. Evans does not contend that his attorney failed to consult with him or to offer him informed opinions as to the best course of action to follow. Rather, the gravamen of all four grounds for relief specified in the § 2255 petition is Evans' contention that the facts cannot reasonably support a § 924(c) conviction against him, as a matter of law, such that it was an error of professional judgment for his attorney to advise and allow Evans to plead guilty under those circumstances. This assignment of error is meritless.

"The Fourteenth Amendment Due Process Clause requires that a plea of guilty be knowingly and voluntarily entered because it involves a waiver of a number of the defendant's constitutional rights." *United States v. Brown*, 117 F.3d 471, 476 (11th Cir. 1997). Nonetheless, the law is clear that "a guilty plea may not be challenged in a collateral attack if it was made voluntarily and with the benefit of counsel." *United States v. Winfield*, 960 F.2d 970, 974 n.2 (11th Cir. 1992). In assessing these factors, it is well established that "the two part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *United States v. Pease*, 240 F.3d 938, 941 (11th Cir. 2001) (citation omitted); *see also Coulter v. Herring*, 60 F.3d 1499, 1503-04 (11th Cir. 1995) (same). With respect to the deficient performance prong, "[c]ounsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice." *Downs-Morgan v. United States*, 765 F.2d 1534, 1539 (11th Cir. 1985) (citation omitted); *see also Cruz v. United States*, 2006 WL 1889947, *3 (11th Cir. July 11, 2006) (counsel's performance in connection with guilty plea is constitutionally adequate as long as counsel makes "an independent examination of the facts and circumstances and offer[s] an informed opinion to the accused as to the best course to follow") (citation omitted). Thus, to

establish deficient performance with respect to a guilty plea, the petitioner must "prove serious derelictions on the part of counsel sufficient to show that his plea was not, after all, a knowing and intelligent act." *Downs-Morgan*, 765 F.2d at 1539 (citation omitted). With respect to the prejudice prong, in the guilty plea context a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Pease*, 240 F.3d at 941 (citation omitted); *see also Coulter*, 60 F.3d at 1504 (similar); *Jackson v. United States*, 976 F.2d 679, 681 (11th Cir. 1992) ("To establish a claim of ineffective assistance in a guilty plea situation, [defendant] must show that but for counsel's errors, he would not have pled guilty.").

Evans can establish neither prong of the *Strickland* test. At his plea hearing, Evans informed this Court under oath that he was completely satisfied with the performance of his attorney, that he understood the elements of the offenses with which he was charged, that he had fully discussed the matter with his attorney, that he had done the acts and things recited in the Factual Resume, that he was pleading guilty because he was in fact guilty, and that his guilty plea was voluntary. Evans cannot blithely dissociate himself from those statements to this Court simply because he now finds it expedient to do so. Rather, his sworn statements are binding. The Supreme Court has cautioned lower courts to view attempts to subvert in-court statements as to the knowing and voluntary nature of a guilty plea with a jaundiced eye, reasoning that:

> "the representations of the defendant ... [at a plea proceeding] as well as any findings made by the judge in accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."

*Blackledge v. Allison*, 431 U.S. 63, 73-74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977) (explaining that the various advantages of the plea bargaining system "can be secured ... only if dispositions by guilty plea are accorded a great measure of finality"); *see also McSwain v. United States*, 2008 WL 2312477, *1 (11th Cir. June 5, 2008) ("The declarations of the defendant in open court carry a strong presumption of verity which is not overcome by the subsequent

presentation of conclusory and contradictory allegations.").[4]  In that regard, "[a] defendant's statement at the time of his Rule 11 hearing that his guilty plea is intelligent and voluntary ... gives rise to a presumption that the plea is constitutionally adequate." *Downs-Morgan*, 765 F.2d at 1541 n.14.

Evans has offered no evidentiary basis for overcoming the strong presumption of verity accorded to his representations under oath during the change of plea hearing that his lawyer had in fact discussed the Plea Agreement and Factual Resume with him, that he was pleading guilty voluntarily because he is guilty, and that he was satisfied with the advice of his counsel.  In his § 2255 Motion, Evans has proffered no evidence or argument that his plea of guilty was the product of misunderstanding, duress, misrepresentation, or patently erroneous advice.  To the contrary, Evans was clearly informed at the Rule 11 hearing of the elements of the crimes to which he was pleading guilty.  He stated under oath that he understood the elements of those crimes, that his plea of guilty was knowing and voluntary, and that he was pleading guilty to those offenses because he was in fact guilty.  Evans has not suggested, much less shown, that his attorney failed to provide him with an understanding of the law in relation to the facts, so that he could make an informed and conscious choice to plead guilty.  Evans has identified no serious derelictions on the part of counsel tending to undermine the knowing and intelligent nature of his guilty plea.  As such, Evans's showing is woefully inadequate to establish the requisite deficient performance to be eligible for relief under *Strickland*.

At most, Evans appears to be arguing that his attorney should not have counseled him to

---

[4]     *See generally United States v. Winston*, 34 F.3d 574, 578 (7th Cir. 1994) ("the record of a Rule 11 proceeding is entitled to a 'presumption of verity,' and [the] answers contained therein are binding"); *Cunningham v. Diesslin*, 92 F.3d 1054, 1060-62 (10th Cir. 1996) (habeas petitioner's claim that he relied upon counsel's promise that he would only serve half his sentence was undermined by petitioner's statements in open court, which carry a strong presumption of verity); *United States v. Marrero-Rivera*, 124 F.3d 342, 349 (1st Cir. 1997) (rejecting petitioner's claims that counsel pressured him to plead guilty, where such claims contradicted sworn responses in Rule 11 hearing, as "it is the policy of the law to hold litigants to their assurances"); *United States v. Martinez*, 169 F.3d 1049, 1054 (7th Cir. 1999) (where a defendant is given several in-court opportunities to reveal improper representations by attorney regarding sentence and fails to do so, that failure overrides later claims that he would not have pleaded guilty but for flawed advice).

enter a guilty plea because the underlying facts (to which he admitted) cannot establish a § 924(c) violation, as a matter of law. Evans is incorrect. The facts to which Evans agreed were that on December 1, 2006, he picked up six kilograms of cocaine from his co-conspirators, then went to a prearranged location to deliver a partial payment of $38,000 for that cocaine shipment to another conspirator. He was arrested at that location upon making the payment. A search of the vehicle Evans drove to the delivery point revealed a firearm that belonged to him under the driver's seat. Bringing a concealed gun, clip and ammunition to a meeting at which one delivers $38,000 in drug proceeds to a co-conspirator gives rise to a reasonable, and indeed compelling, inference that Evans was possessing the firearm to provide defense or protection in the delivery of drug profits. This inference in turn would support a violation of 18 U.S.C. § 924(c)(1)(A), which prohibits any person from possessing a firearm in furtherance of a drug trafficking crime. It is pellucidly clear that a reasonable jury could find a § 924(c) violation from the facts which Evans admitted that the Government could establish beyond a reasonable doubt. To prove a violation of § 924(c), the Government must establish that Evans "(1) knowingly (2) possessed a firearm (3) in furtherance of any drug trafficking crime." *United States v. Woodard*, --- F.3d ----, 2008 WL 2548973, *7 (11th Cir. June 27, 2008). Evans does not and cannot dispute the first and second elements; therefore, the only remaining question is whether the "in furtherance" element is met. Federal courts have routinely deemed that element satisfied where the firearm is found in close proximity to drugs or drug proceeds. *See, e.g., Woodard*, 2008 WL 2548973, at *8 (defendant's possession of a firearm while taking possession of a valuable shipment of marijuana was sufficient to satisfy "in furtherance" element); *United States v. Miranda*, 425 F.3d 953, 962 (11th Cir. 2005) (evidence was sufficient to sustain § 924(c) conviction where firearms were lying in plain view on mattress next to substantial quantities of drugs); *United States v. Timmons*, 283 F.3d 1246, 1252 (11th Cir. 2002) ("[t]he nexus between the gun and the drug operation can be established by the type of drug activity that is being conducted, accessibility of the firearm, the type of weapon ... proximity to the drugs or drug profits, and the time and circumstances under which the gun is found"). In light of the undisputed facts, it was certainly not a dereliction of professional responsibility (and to the contrary appeared to be prudent advice) for Evans' counsel to recommend that he enter a guilty plea as to the § 924(c) count, given the high likelihood that he would be found guilty of same at trial.

Evans' arguments to the contrary are frivolous. He insists that he "was duly licensed and authorized to have a weapon in his possession." (Doc. 213, at 4.) But being licensed to carry a firearm certainly does not immunize one from liability under § 924(c) for possessing a firearm in furtherance of a drug conspiracy, as Evans did. Evans balks that the weapon was unloaded, but that fact is not dispositive, given Evans' admission that the clip and ammunition were found next to the gun under the seat of the car which Evans drove to the meeting where he delivered $38,000 in drug proceeds. Evans protests that "at no time did [he] possess or use the weopon [*sic*] in connection with or furtherance of 21 U.S.C. § 846 offenses." (*Id.*) In so arguing, Evans conveniently overlooks the statement in his Factual Resume, to which he agreed both in writing and verbally under oath to this Court, that "Evans admits that he used and carried the pistol ... in relation to and in furtherance of the drug conspiracy." (Factual Resume, at 3.) No explanation is offered for this abrupt, conclusory contradiction. Evans does not have the luxury of recanting his sworn admissions to this Court simply because he has changed his mind as to the wisdom of his guilty plea after ruminating on the subject for more than a year in prison.[5]

Even if Evans could establish deficient performance by his lawyer for advising and allowing him to enter a guilty plea to the § 924(c) charge, he has failed to satisfy the second prong of *Strickland*. In particular, he has not argued, demonstrated or even suggested that but for his attorney's allegedly deficient performance, he would not have entered a guilty plea, but would instead have gone to trial. Such an omission is fatal to his claim. *See Pease*, 240 F.3d at 941.

### IV. Conclusion.

Evans was caught red-handed delivering a considerable sum of drug proceeds to a co-conspirator (who also happened to be a Government informant) while law enforcement officers were watching. He drove to the delivery location in a car with his gun, clip and ammunition under the front seat. He was indicted under charges that carried a mandatory minimum penalty of 180 months had he gone to trial and been convicted. Evans was facing very serious charges,

---

[5] Besides, Evans does not even attempt to explain why he had a firearm with him in the vehicle if not as protection for his delivery of a large sum of drug proceeds to a co-conspirator in furtherance of the drug conspiracy. The "in furtherance" element is plainly satisfied here, and Evans' conclusory, self-serving contentions to the contrary are baseless.

and the Government's case against him was quite strong. His lawyer averted the near-certainty of a mandatory 15-year prison sentence for Evans by negotiating a favorable plea agreement with the Government, under which Evans pleaded guilty and cooperated with the Government, as a result of which he secured a 50% reduction off the mandatory prison term that he would have otherwise faced. This was an exceptionally good result, one far better than those attained by many other defendants in this District Court facing similar charges based on similar conduct.

Nonetheless, Evans filed a § 2255 motion seeking to vacate the guilty plea, asking the Court to ignore the Factual Resume to which he agreed in writing and to disregard his sworn statements at the plea hearing, because he no longer agrees with his counsel's legal assessment that his admitted conduct amounts to a violation of § 924(c)(1). Evans is wrong. The undisputed facts readily support a § 924(c) conviction. It was not error – much less constitutionally deficient performance – for his attorney to recommend that he plead guilty and allow him to plead guilty under those circumstances. That advice, and Evans' decision to follow it, likely saved Evans years of incarceration. This is not ineffective assistance of counsel.

For all of these reasons, Evans' Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (doc. 213) is **denied**.[6]  A separate judgment will enter.

DONE and ORDERED this 4th day of August, 2008.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[6] The law is clear that "[a] district court may deny relief under 28 U.S.C. § 2255 without an evidentiary hearing if the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Long v. United States*, 883 F.2d 966, 968 (11th Cir. 1989) (citations omitted). As the file in this case conclusively establishes that Evans is not entitled to relief under § 2255, his petition is denied without a hearing.